44030, 44033. HOLY CROSS LUTHERAN CHURCH, INC.
v. CLAYTON COUNTY et al.; and vice versa.

(354 SE2d 151)

HUNT, Justice.

Holy Cross Lutheran Church, Inc. is the owner of two adjoining lots located in a section of Clayton County zoned as single family residential. Holy Cross' applications to have the lots rezoned for commercial use were denied by the Clayton County Board of Commissioners. Holy Cross appealed to the superior court, contending that the residential zoning of its property was unconstitutional. Case No. 44030 is an appeal from the trial court's refusal to set aside the board's decision denying the application to rezone the southern tract. Case No. 44033 is an appeal from the trial court's order finding that the board acted unconstitutionally with regard to the application to rezone the northern lot and declaring that lot to be free of all zoning restrictions.

1. In Case No. 44030, involving the southern lot, the trial court concluded that the board did not act unconstitutionally in denying Holy Cross' petition for rezoning. However, the trial court did not set forth any findings of fact in support of its holding and, therefore, we are unable to review the trial court's decision in this appeal. Accordingly, this case is remanded for preparation of written findings of fact, after which the losing party may appeal. OCGA § 9-11-52 (a); see *Dougherty County v. Webb*, 256 Ga. 474, 477 (fn. 3) (350 SE2d 457) (1986).

2. (a) In Case No. 44033, involving the northern lot, the trial court, in its order setting forth findings of fact and conclusions of law, held that the board acted unconstitutionally in denying Holy Cross' petition for rezoning. The focus in this case, as in all zoning cases, is whether Holy Cross, as the party challenging the existing zoning, has suffered a significant deprivation insubstantially related to the public health, safety, morality or welfare. *Gradous v. Bd. of Commrs.*, 256 Ga. 469, 470 (349 SE2d 707) (1986). The existing zoning is presumptively valid, *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322 (232 SE2d 830) (1977), and to prevail in its challenge, and before the county was required to present any evidence, Holy Cross was required to show by clear and convincing evidence *both* that it will suffer a significant detriment under the existing zoning, and that the existing zoning bears an insubstantial relationship to the public interest. *Gradous*, supra at 471.

Only after this initial burden is met must the governing authority come forward with justification for the zoning as reasonably related to the public interest. Id.; *City of Roswell v. Heavy Machines Co.*, 256 Ga. 472, 474 (349 SE2d 743) (1986). A further consideration is that the question of the reasonableness of a zoning classification involves constitutional reasonableness, rather than economic reasonableness.

Id. As we have recently reiterated, we apply the "clearly erroneous" standard in our review of the trial court's findings of fact. *Dougherty County*, supra. Of course, we owe no deference to the superior court as to the law. Id.

(b) The property in question is a .9 acre, irregularly shaped tract of land, which, along with the southern tract at issue in Case Number 44030, is located in a "fringe" area, comprised of both residential and commercial uses. This northern tract lies directly between a major highway and a residential neighborhood. It fronts the highway at the tract's narrow, eastern end for 57.8 feet, and on its southern side has 445.9 feet frontage on the road which serves as the main entrance to a high-quality residential neighborhood. It is bounded on the west by residential lots, on the north by commercial lots, and to the south, just across the road leading to the high-quality residential neighborhood, lies the vacant lot at issue in Case No. 44033, which is zoned residential. The trial court concluded that Holy Cross met its burden of proof in showing that it would suffer a significant detriment under the existing zoning. In support of this conclusion, the trial court found that the property had remained vacant under the existing residential zoning and was worth $9,000 under that zoning, that Holy Cross had received no offers to purchase the property under its current zoning but had received offers to purchase the property contingent on its being zoned commercial, and that the property has a value of at least $80,000 if zoned commercial so that Holy Cross would suffer an economic loss of at least $71,000 if the property were not rezoned. The trial court further found that the property was unsuitable for residential use. However, it was uncontroverted that Holy Cross had not attempted to market the property for residential use. Although a real estate developer testified on behalf of Holy Cross that in his opinion it would be "difficult" to develop the subject property for residential use, Holy Cross' own appraiser did not testify that the property was unsuitable for residential use. Further, the county presented the testimony of an appraiser as well as that of a professional city planner to the effect that the property could be developed and sold as two residential lots and that it would be appropriate to do so in view of the surrounding uses. Thus, the trial court's finding that the property was not suitable for residential use was not supported by the evidence, even under our "clearly erroneous" standard of review.

The only evidence of any detriment to Holy Cross under the existing zoning is an economic loss. The county did not dispute Holy Cross' argument and the trial court's finding regarding the economic loss to Holy Cross if it were not permitted to sell the property for commercial use. However, there is always an economic loss in comparing a property's value as zoned residential to its value if zoned commercial, and for this reason we have often held that diminution of

value itself does not constitute a constitutional deprivation. *Gradous,* supra at 471; *Flournoy v. City of Brunswick,* 248 Ga. 573, 574 (285 SE2d 16) (1981). Although we have held that property need not be rendered worthless for its owner to suffer an unconstitutional deprivation, the evidence submitted by Holy Cross, that it would be "difficult" to develop the property for residential use, and that it will suffer an economic loss if it is not permitted to sell the property for commercial use, is not sufficient to support the trial court's conclusion that Holy Cross would suffer a substantial detriment in the constitutional sense if the property remains as presently zoned. See *Gradous,* supra at 472.

(c) Further, our review of the evidence shows that it does not support the trial court's conclusion that the existing zoning is insubstantially related to the public health, safety, morality, and welfare. The county presented ample evidence, which was undisputed, of the detriment to the public in terms of noise, light, and traffic, which would affect the public safety and welfare, and would inevitably diminish the value of the adjoining residential areas, if the property were rezoned commercial. Thus, the trial court's finding that commercial zoning of the lot would pose no danger to the public is clearly erroneous. The remaining facts, as found by the trial court — including the facts that the property fronts a major, heavily traveled highway, that property in the area is increasing in value and has seen continued growth and expansion of commercial development, that the property has been left vacant and unproductive while other properties in the immediate area have been allowed to grow and expand with commercial development — although correct under our "clearly erroneous" standard of review, are insufficient to support the trial court's conclusion that the existing zoning is insubstantially related to the public health, safety, morality and welfare, especially in light of the presumption of the validity of the existing zoning. Moreover, there was considerable evidence presented by the county of the benefit to the public in preserving the existing residential zoning of the northern tract in order to maintain the integrity of the adjoining residential neighborhood.

(d) We are increasingly called upon to review controversies regarding "fringe areas" such as the property in question here — residential property bordering commercial property, with the economic value of the property for residential use lessening with encroaching commercial development. We take this opportunity to reiterate that "the local governing body is the more appropriate one to shape and control the local environment according to the best interests of the locality and its citizens." *Westbrook v. Bd. of Adjustment,* 245 Ga. 15, 17 (262 SE2d 785) (1980). "The local government has drawn the line as to these encroachments, and [in our review of the evidence under

the 'clearly erroneous' standard, Holy Cross has] not demonstrated by clear and convincing evidence that the denial of their zoning request was so unreasonable as to constitute an unconstitutional taking of their property." *Flournoy*, supra at 574. See also *Gradous*, supra.

3. In light of our holding in Division 2, we need not address the county's final enumeration of error regarding the trial court's order that the northern tract be declared free of all zoning.

*Judgment in Case No. 44030 remanded. All the Justices concur. Judgment in Case No. 44033 reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED APRIL 9, 1987.

*Oliver, Duckworth, Sparger & Winkle, G. Robert Oliver,* for appellant.

*Glaze & McNally, George E. Glaze, Steven M. Fincher, James E. Ervin,* for appellees.